Filed 12/14/20  In re A.G. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| In re A.G. et al., Persons Coming Under the Juvenile Court Law. | C090836 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>E.G.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JD239761, JD239762, JD239763) |

E.G., father of the three minors (father), appeals from the juvenile court's order denying his petition requesting to modify the court's order terminating dependency jurisdiction and awarding mother full legal and physical custody of the minors with

agency-supervised visitation for father.  (Welf. & Inst. Code, §§ 388, 395.)[1]  We will affirm the juvenile court's orders.

BACKGROUND

This family came to the attention of the Sacramento County Department of Child, Family, and Adult Services (Department) in February 2019 after a report that the parents left the three minors (all of whom were under the age of four) in the car, went inside their home, and engaged in mutual physical violence against each other which resulted in both parents sustaining injuries and being arrested.  Father was interviewed two weeks later. He refused to give a full statement, denied any physical altercation, and refused to provide any further details.

Mother was interviewed in March 2019 and admitted to past verbal and physical abuse by father resulting in injuries to her head and a broken jaw.  She denied ever hitting father and claimed father's marks were self-inflicted.  She also reported the ongoing domestic violence was negatively impacting the minors' well-being, but stated she continued to stay in the home even though father was verbally abusive to the minors and the paternal grandmother was "crazy" and used heroin.  Mother admitted having recanted earlier statements of abuse to police and social workers due to her fear of retaliation by father and the paternal grandmother.

On March 23, 2019, mother arrived at the Child Protective Services (CPS) office and reported that she, father, and the minors were temporarily staying at a motel.  After leaving the minors with father to go shopping, she returned to the hotel and found father had broken the door of the hotel room and had also broken her cell phone.  She asked father to leave and he did.  Mother was directed to contact the WEAVE (Women Escaping a Violent Environment) program but had not yet done so.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

The social worker attempted to find a shelter to accommodate mother, but none were available. A safety plan was completed with mother, who agreed to call 911 if father returned to the motel where she was staying with the minors, have a "go bag" ready in the event of an emergency, and not return to father or to the family home. Mother reported she felt her life and the lives of the minors were in danger and she planned to stay at the motel until she could find a safe house.

On March 27, 2019, the social worker received a call from a staff member at the Salvation Army who stated the parents had come in asking for assistance with paying a bill. Mother appeared fearful and slipped a copy of the safety plan to the staff member, stating she and the minors were in danger and needed help getting away from father, who the staff member described as aggressive. That same day, as a result of that encounter, the social worker went to the parents' home, accompanied by law enforcement officers. Both parents were in the front yard and all three minors were strapped into their car seats inside the car. Father became aggressive and approached mother asking, "What did you tell them." The officers detained father before he could reach mother and transported him to jail. The minors were placed in protective custody.

On March 29, 2019, the Department filed dependency petitions pursuant to section 300, subdivision (b) alleging failure to protect the minors due to a history of, and ongoing, domestic violence between the parents, much of which occurred in the presence of the minors. The petitions also alleged father's untreated anger management which contributed to the domestic violence, and mother's failure to protect the minors or keep them safe from the ongoing domestic violence.

The detention report detailed a significant history of domestic violence and child welfare referrals dating back to February 2017, including incidents during which father hit, choked, and head-butted her, and another incident during which father hit the eldest minor (then 18 months old) for disturbing him while he was sleeping. Some of the alleged incidents also involved the paternal grandmother.

3

On April 2, 2019, the court ordered the minors detained, reunification services to both parents, and observed visitation for each parent separately, and set the matter for a contested jurisdiction/disposition hearing.

According to the Department's April 11, 2019 report, the social worker met with the minors. Am.G. (15 months old), At.G. (two years old), and Y.G. (three years old) all appeared clean and well cared for. At.G. said, "Mommy and daddy are in jail because they fight," and added "Daddy hits mommy" in the house and "Daddy is mean to mommy." The caregiver reported At.G. was very verbal about the current circumstances, stating her parents fought and "[t]hey don't love each other." The caregiver observed At.G. playing with her dolls and saying, "This is the police. Don't take my kids." At.G. also told the caregiver, "At my house I'm scared" and "Dad wanted to hit the police." When Y.G. was asked where her parents were, she stated, "They fight and the police came. My dad hit my mom and my mom hit my dad. They punch." She added, "They fight about mommy's necklaces." Y.G. also stated, "I'm afraid for my mom and dad," adding, "I cry when they hit each other." The caregiver reported Y.G. stated, "I like it here because at home I'm scared." The report documented the parents' prior CPS history, as well as the February 7, 2019 incident which led to removal of the minors.

The report also documented the minors' behavior during visitation with mother, stating the minors behaved "like wild animals," grabbing mother's hair, scratching her face, socking her in the head, and biting her face.

The Department determined the parents were not capable of providing adequate care and supervision to the minors, and the risk of physical harm, abuse, and neglect if the minors were returned to the parents was high due to the parents' history of engaging in domestic violence, father's untreated anger management issues, and mother's failure to protect the minors. The Department recommended the petition, amended to include a subdivision (c) allegation regarding emotional abuse, be sustained and that the minors remain in out-of-home placement while the parents engaged in reunification services.

On April 11, 2019, the Department filed amended dependency petitions which modified the section 300, subdivision (b) allegation to state that mother reinstated her relationship with father despite having sought a restraining order against him, and father reinstated his relationship with mother despite having filed for divorce and intervention by the Department. The amended petitions also added a subdivision (c) allegation regarding emotional abuse, as recommended in the previous report.

The May 3, 2019 addendum report stated an unannounced visit of mother's home revealed no safety concerns and a safe environment and adequate provisions for the minors. Mother reported she had "a lot of support from people in Morocco."

Mother testified at the contested jurisdiction hearing on May 3 and 6, 2019. She presented documents showing she filed for divorce or legal separation from father on April 5, 2019. The documents included her request for joint legal custody and sole physical custody of the minors. She also presented documentation evidencing her participation in services.

On May 10, 2019, the juvenile court sustained the amended dependency petition. Finding there was a substantial danger to the minors' well-being if returned to father's care and no reasonable means of protecting them in lieu of removal, the court ordered the minors placed with mother in a confidential placement, with supervised visitation for father. The court also issued a restraining order pursuant to section 304 based on mother's testimony and evidence in the report, including that there had been numerous allegations of domestic violence between father and mother since 2017, father had unsecured weapons, mother unsuccessfully attempted to obtain a restraining order against father in 2018 after an incident of mutual domestic violence in the minors' presence, the minors' statements that father "hits the mother" and "is mean to the mother" and the parents fought frequently, and father's resistance to law enforcement officers' attempt to detain the minors. The court expressed its concern that father would attempt to contact mother or determine her confidential location or "do something worse," stating the

5

restraining order was the only means by which to ensure father did not have access to the nine weapons he owned or to purchase additional weapons. The court issued the restraining order for a duration of two years, to expire on May 10, 2021, and ordered that father's visitation with the minors be supervised.[2]

The paternal grandparents filed separate petitions pursuant to section 388 requesting overnight visitation with the minors.

The Department filed a progress report stating intensive supervision over the case was no longer necessary given that mother had made substantive progress in her case plan since the minors were returned to her care and was applying what she learned to her care of the minors.

On July 19, 2019, the court granted father's motion to represent himself, continued intensive supervision twice monthly, and ordered mental health assessments for both parents.

On August 21, 2019, the Department reported father initially refused to meet with the social worker to obtain a list of service providers.[3] When he finally met with the social worker in June 2019, he created his own schedule and insisted on providing his own preferences for service providers for individual therapy and a mental health assessment. As of July 2019, he had not provided a preference for a contracted provider. Father reported he completed a mental health assessment on July 31, 2019, but the social worker had yet to receive documentation confirming that claim. While father completed domestic violence classes, he continued to blame mother, law enforcement, and CPS for all of the problems in his marriage, and he accused the Department of showing partiality

---

[2]     Father appealed the court's issuance of the restraining order. We concluded father forfeited his appeal. (See *In re Y.G. et al.* (Dec. 11, 2020, C089508) [nonpub. opn.].)

[3]     Father's case plan required him to complete a domestic violence program, individual counseling, a mental health assessment, and parenting education.

towards mother. Father participated in a parenting education class and began anger management classes in May 2019. The social worker was unable to verify whether father participated in individual therapy.

Mother reportedly completed most components of her case plan, including parenting, domestic violence, and anger management classes, but she had yet to complete a mental health assessment.

Father had difficulty working with service providers and appropriately monitoring all of the minors during visits. He reportedly referenced the "Nazi Regime" several times during his conversations with the social worker. The Department assessed that it would not be in the minors' best interest to increase father's visitation given father's hostile behavior in interacting with the Department and service providers.

*Father's Section 388 Petition*

On September 16, 2019, father filed a section 388 petition requesting that the court set aside the restraining order, terminate the Department's discretion over visitation, and release the minors to him under joint physical custody with mother. He argued he completed 36 classes and completed the case plan for domestic violence, anger management, and parenting. He further argued the minors stayed with him for three months while mother worked in San Francisco and "nothing happened to the children at all." He stated he completed over 100 supervised visits without incident and the minors wanted to return to his care. The court summarily denied father's request for failure to state new evidence or a change of circumstances.

*In-Home Review Report*

The Department filed an in-home review report on October 17, 2019 recommending that the minors remain in mother's care and the court continue the dependency for a period of 30 days followed by a progress report to address possible termination of dependency. Mother completed her services and had been able to demonstrate what she learned and that she was able to apply those skills in her everyday

7

interactions with the minors and the service providers, benefit from services, and maintain housing. The minors, who were placed with mother in May 2019, were reportedly thriving and had adjusted well to living in mother's care.

Father reportedly completed his domestic violence classes and stated he learned about the cycle of violence. He completed anger management and was reportedly taking ownership of his actions. He was also participating in parenting education services. However, the social worker was still unable to confirm whether father completed his mental health assessment. The Department reported that father's visits with the minors were challenging in that father had difficulty monitoring, became overwhelmed with, and did not adequately supervise the minors. Father's continued hostility with Department personnel led the Department to believe father had not benefitted from services.

*October 25, 2019 Review Hearing*

On October 25, 2019, the court held the in-home review hearing pursuant to section 364. Father requested immediate termination of dependency jurisdiction, as did mother. The court stated that, if dependency jurisdiction were terminated, it would make a tentative ruling that father would have agency-supervised visitation, to which father objected. The court also expressed concern with immediate termination of dependency jurisdiction, stating it was inclined to continue the matter 30 days so that father could improve visits such that the Department would then have discretion to change father's visits to unsupervised before termination of dependency jurisdiction. However, after some discussion off the record, the court noted father and the other parties agreed with immediate termination of dependency with the sole contested issue being custody.

The Department objected to termination of jurisdiction. With respect to custody, the Department argued mother should have sole legal and physical custody of the minors with agency-supervised visitation for father due to his inability to properly supervise the minors during visits. Mother agreed with the Department's position on custody and visitation and requested that the existing restraining order remain in effect. The minors'

counsel also agreed to termination of dependency jurisdiction. Father agreed to termination of jurisdiction, disagreed with mother having sole legal and physical custody of the minors, and disagreed that the restraining order was still necessary.

The court reiterated its preference to continue the matter 30 days to allow father to work toward unsupervised visits but determined that conditions no longer existed to justify the initial assumption of jurisdiction pursuant to section 300. The court noted the minors were returned to mother in May 2019 and "[s]he's been doing fine and very well since that date." The court terminated dependency jurisdiction and entered exit orders giving mother sole legal and physical custody of the minors and requiring agency-supervised visitation for father.

*Father's Application for Rehearing*

On November 12, 2019, father filed an application for rehearing of the court's ruling at the section 364 hearing claiming the court made its exit orders without legal justification.

On December 2, 2019, the presiding judge of the juvenile court, Honorable Jerilyn Borack, denied father's application noting father was adamant that the court terminate dependency jurisdiction, as were mother and the minors, and that father had requested that the court issue custody and visitation orders that day. Judge Borack also found termination of dependency was warranted because conditions no longer supported dependency jurisdiction and continued supervision of the minors' case by the Department or the juvenile court. Judge Borack further found that concerns remained about father's visits with the minors and his interactions with the Department and therefore there was insufficient evidence to support modification of the restraining order. Judge Borack concluded the order terminating dependency, granting mother sole legal and physical custody of the minors, and providing for agency-supervised visits for father was supported by the evidence.

DISCUSSION

I

*Denial of Section 388 Petition*

Father contends the juvenile court erred when it denied his section 388 petition without a hearing.  He claims the petition made a prima facie showing of changed circumstances and that the requested change was in the minors' best interests such that an evidentiary hearing was warranted.  The claim lacks merit.

A petition to change or modify a juvenile court order under section 388 must factually allege that there are changed circumstances or new evidence to justify the requested order, and that the requested order would serve the minors' best interests.  (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672.)  The petitioner has the burden of proof on both points by a preponderance of the evidence.  (Cal. Rules of Court, rule 5.570(h)(1)(D).)[4]  In assessing the petition, the court may consider the entire history of the case.  (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

To decide whether a parent has met his or her burden under section 388, the juvenile court must consider such factors as the seriousness of the problem that led to the dependency, and the reasons for the problem's continuation; the degree to which the problem may be and has been removed or ameliorated; and the strength of the relative bonds between the dependent child and the child's parents or caretakers.  However, this list is not exhaustive.  (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1229.)

The child's best interests "are not to further delay permanency and stability in favor of rewarding" the parent for his or her "hard work and efforts to reunify."  (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.)

---

[4]     Further rule references are to the California Rules of Court.

"A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) The petition must be liberally construed in favor of its sufficiency. (Rule 5.570(a).) Nonetheless, if the juvenile court finds that even so construed the petition fails to make a prima facie case as to either or both tests under section 388, the court may deny the petition without an evidentiary hearing. (*In re Justice P., supra*, 123 Cal.App.4th at p. 189; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; see rule 5.570(d).)

We review the denial of a section 388 petition for abuse of discretion. (*In re S.R.* (2009) 173 Cal.App.4th 864, 870; *In re J.T.* (2014) 228 Cal.App.4th 953, 965.)

As a preliminary matter, father asserts in passing that the court's denial of his section 388 petition involved his right to due process. However, father did not object in the juvenile court at any time after the court's denial of his petition. Thus, any claim of denial of due process was forfeited. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 222.)

In any event, the juvenile court did not abuse its discretion in denying father's petition without a hearing. Father's petition, filed September 16, 2019, argued changed circumstances or new evidence by alleging father completed "36+ classes" and completed "the case plan for Domestic Violence, Anger Management, Parenting." However, just one month prior, the Department reported that father had already completed a number of services, including a domestic violence program, but that he continued to blame mother, law enforcement, and CPS for all of the problems in his marriage, and he accused the Department of showing partiality towards mother. The Department also noted father's hostile behavior in his interactions with Department staff and service providers was a barrier to increasing his visitation with the minors. Given father's history of domestic violence, the bare allegation that he completed various

11

services was insufficient to demonstrate whether, in the month since the Department's last report, father derived any benefit from those services or applied what he learned to remove or ameliorate the underlying issues. Based on the information already before the court, and the absence of any detailed explanation as to how completion of those services manifested changes in father's behaviors, father's circumstances were at best changing but had not yet changed for purposes of section 388.

Even assuming father had sufficiently demonstrated changed circumstances, he failed to make a prima facie case that the requested plan was in the minors' best interests. In that regard, father's petition alleged the minors stayed with him for three months while mother worked in San Francisco and he completed over 100 supervised visits with the minors, all without incident. However, he failed to provide any relevant detail such as when the three-month time period occurred or what period encompassed the 100 visits. Again, the Department's report filed one month prior to the petition belies father's allegations that everything was progressing well. The report stated father's interactions with Department staff and service providers continued to be hostile and led staff to the conclusion that father had not benefitted from services. As a result of those continuing behaviors, the Department determined it was not in the minors' best interest to progress with father's visitation. Father's allegations failed to demonstrate that setting aside the restraining order, terminating Departmental discretion over visitation, and releasing the minors to him under joint physical custody with mother was in the minors' best interests.

The evidence supports a finding that father failed to make a prima facie case for the changes requested in his section 388 petition. Therefore, the juvenile court did not abuse its discretion in denying father's petition without a hearing.

12

II

*Exit Orders*

Father contends the juvenile court abused its discretion when it entered exit orders giving mother sole legal and physical custody of the minors and requiring agency-supervised visitation for father. The claim is untenable.

A juvenile court has the power to make " 'exit orders' " regarding custody and visitation when it terminates dependency jurisdiction, which will remain in effect unless terminated or modified by a family law court. (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123.) When terminating jurisdiction and issuing custody orders, the juvenile court must consider the best interests of the child. (*In re John W.* (1996) 41 Cal.App.4th 961, 973.)

We review a juvenile court's decision to terminate dependency and to issue exit orders for abuse of discretion. (See *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) We will not disturb an exit order " ' "unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318; *Bridget A.,* at p. 300.) The test for abuse of discretion is whether the juvenile court exceeded the bounds of reason. If two or more inferences can reasonably be deduced from the facts, we may not substitute our decision for that of the juvenile court. (*In re Stephanie M.,* at pp. 318-319.)

Father claims the juvenile court relied primarily on the existing restraining order to award mother sole legal and physical custody of the minors and to require agency-supervised visitation for father. He argues that, in the event this court reverses and remands the restraining order pursuant to his separate appeal (*In re Y.G. et al., supra,* C089508) from issuance of the restraining order, the court's exit orders were therefore "premised in large part on an improper criterion" and should also be reversed and remanded for further proceedings. As previously discussed above, we concluded father

13

forfeited his appeal in case No. C089508 and affirmed the juvenile court's order issuing the restraining order. As such, it was not improper for the juvenile court to consider the existence of the restraining order in making its exit orders.

In any event, the record belies father's claim that the court relied primarily on the restraining order in making its exit orders. At the outset of the hearing, the court stated it read and considered the Department's in-home review report. The report made clear two things: On the one hand, mother completed her services and was able to demonstrate the skills she learned and apply them in her daily interactions with service providers and the minors, who were well-adjusted and thriving in her care. She also demonstrated she was able to maintain housing, appropriately and safely take care of the minors who had been in her care since May 2019, and ensure the minors received the necessary services they required.

On the other hand, while father completed his domestic violence and anger management classes and claimed he learned about the cycle of violence, his continuing hostility with the Department and service providers raised concerns about whether he had in fact benefitted from those services. Further, father's visits with the minors were reportedly challenging because father at times became overwhelmed and had difficulty monitoring, protecting, or adequately supervising the minors, such that the Department felt it was not in the minors' best interests for visitation to progress to unsupervised.

In addition to considering the report, the court heard argument from the parties which included mention not only of the restraining order but also the parents' respective progress in services, the fact that the parties were legally separated pending mother's request for divorce, whether father's visits should continue to be supervised, the minors' level of comfort with continued visits with father, and whether dependency jurisdiction should be terminated immediately or after a 30-day continuance to allow father to possibly progress to unsupervised visits. Indeed, it was father who first brought the issue of the restraining order to the court's attention. Thereafter, the minors' counsel noted the

14

restraining order would make joint legal custody difficult, and mother argued for sole legal and physical custody "given that the request is for supervised visitation, and there is a restraining order in place . . . ."

Despite the court's repeated statement that it preferred to continue the matter 30 days to allow father to progress with visitation, father was adamant that immediate termination of dependency jurisdiction was necessary, and mother and minors' counsel agreed. Based on the parties' agreement, and finding the conditions that justified the initial assumption of jurisdiction no longer existed, the court terminated dependency jurisdiction. Noting that "father's visits could possibly have gone to unsupervised if we had continued [the hearing] 30 days," and reiterating its preference for the continuance and the parties' objection thereto, the court ordered that mother have sole legal and physical custody of the minors and that father have agency-supervised visitation. The court explained its exit orders stating that, while the conditions that justified the initial assumption of jurisdiction no longer existed, the court shared the Department's concerns about mother's judgment in choosing an appropriate person to supervise father's visits with the minors, father had not had any unsupervised visits for various reasons, and father had a restraining order against him that was effective until 2021. As evidenced by the record, numerous factors were considered in the court's exit order determination.

We reject father's claim that the juvenile court failed to base its custody exit order on the best interests of the minors. As previously discussed, the record revealed that father's completion of some but not all of his case plan services did not necessarily translate to application of learned skills in father's interactions with others, including Department staff and the minors. In particular, father's visits had never progressed from supervised to unsupervised and he had difficulty monitoring, protecting, or adequately supervising the minors, at times becoming overwhelmed. Those issues, coupled with father's continuing hostility toward the Department, provided a sufficient basis from

15

which to infer the court considered the best interests of the minors in making its custody exit order.

We similarly reject father's claim that the court abused its discretion in ordering that visitation be supervised by the Department. For the reasons previously discussed, the order requiring agency-supervised visitation for father was neither arbitrary nor capricious. The Department reported its concerns about father's issues with visitation and his continuing hostility toward Department staff, and the court noted it shared the Department's concern in allowing mother to choose who would supervise father's visits. As such, agency-supervised visitation was necessary and appropriate.

Finally, father claims the visitation order was arbitrary and capricious because it conflicted with the order terminating jurisdiction. This is so, he argues, because the court terminated dependency jurisdiction based on a finding that the conditions justifying the initial assumption of jurisdiction—including mother's poor judgment in returning to relationships characterized by domestic violence—no longer existed and yet the court cited mother's poor judgment as a reason for agency-supervised visitation. Father mischaracterizes the court's statements. The original conditions justifying initial jurisdiction included domestic violence between the parents and father's anger management issues, as well as emotional abuse sustained by the minors as a result of the domestic violence. As mother's counsel argued, both parents participated in their respective services related to those issues and there had been no incidents of domestic violence since the inception of the dependency case. Based thereon, and despite its inclination to continue the case another 30 days, the court found the original conditions no longer existed to justify continued dependency jurisdiction. However, with regard to the issue of whether father's visitation should be supervised, mother argued she was the custodial parent and therefore "should and does have the ability to designate an appropriate person that she trusts, that she believes will adequately supervise the father's visits." Noting that, less than 10 months prior, mother said she was going to leave father

16

but instead met up with him after which a domestic violence incident ensued, the court expressed concern about whether mother was the best person to determine who should supervise father's visits with the minors and stated, "So for a variety of reasons I think it's appropriate at this time to have agency-supervised visits." Consideration of mother's judgment, or lack thereof, in that context did not conflict with the court's finding that continued dependency jurisdiction was no longer justified.

The court did not abuse its discretion in issuing exit orders giving mother sole legal and physical custody of the minors and requiring agency-supervised visitation for father.

## DISPOSITION

The juvenile court's orders are affirmed.

/s/
BLEASE, J.

We concur:

/s/
RAYE, P. J.

/s/
MURRAY, J.